UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05 B 31460 |
| | ) | |
| Lehman Financial Group, LLC, | ) | Chapter 11 |
| an Illinois Limited Liability Company, | ) | |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

## AMENDED MEMORANDUM OPINION

Secured creditor 168 North Michigan Finance LLC ("Finance") obtained a foreclosure judgment in the Circuit Court of Cook County on June 30, 2005, against Lehman Financial Group LLC. On August 10, 2005, Judge Nixon of that court denied Finance's subsequent motion to modify such judgment to include attorneys' fees for the prejudgment period of time from May 31, 2005, to June 30, 2005. (Ex. to Debtor's Objection to Claims of Finance: Report of Proceedings, August 10, 2005, at 9, 22.) That same day, Lehman filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code. This Court set the claims bar date in the case as February 27, 2006, the same day that secured creditor filed its proof of claim for $6,479,241.08 plus interest and advances. The debtor-in-possession's Chapter 11 plan was confirmed on May 3, 2006. Secured creditor Finance noticed a motion to amend its foreclosure judgment in state court on May 22, 2006, and the Circuit Court of Cook County, Judge Simko presiding, entered the amended foreclosure judgment on May 24, 2006, increasing the judgment to $7,310,725.41 to account for additional attorneys' fees for both the period for which they had previously been denied by Judge Nixon (May 31 through June 30 of 2005) as well as for the post-foreclosure-judgment period. The bankruptcy claim amendment, based almost entirely on the amended

1

judgment, was filed herein on July 10, 2006, increasing the total bankruptcy claim to $7,496,493.32.

## I. Claim Objection and Disallowance Under 11 U.S.C. § 502(b)

The Chapter 11 debtor-in-possession objects to the post-bar-date claim amendment of secured creditor Finance based on the amended foreclosure judgment from state court. The requirements for the amendment of proofs of claim after the proof of claim bar date include two inquiries. The Seventh Circuit has begun by using the amendment standard from Bankruptcy Rule 7015 (Civil Rule 15(c)(2)), which creates a nexus test, and then continues to other equitable considerations. *Holstein v. Brill*, 987 F.2d 1268, 1270-71 (7th Cir. 1993) (satisfying Rule 15(c) test was not sufficient to permit amendment); *Matter of Unroe*, 937 F.2d 346, 349-50 (7th Cir. 1991); *Matter of Plunkett*, 82 F.3d 738, 740-41 (7th Cir. 1996). The nexus test seeks to determine whether the amendment to the proof of claim is based on the same underlying legal claim or whether it is in fact a new claim for which the creditor missed the proof-of-claim bar date. Additionally, the Bankruptcy Court must take into account various equitable considerations, including whether other creditors may be unfairly prejudiced or unfairly surprised; whether the efficiency of administering the estate will be compromised; whether excusable neglect or inattentiveness exist on behalf of the claimant; whether the debtor-in-possession had knowledge or notice of the claim before the deadline; whether essential documents were available; whether the debtor hindered computation of the claim; and whether the amending creditor has engaged in any bad faith, retaliatory, or dilatory conduct. *Matter of Unroe*, 937 F.2d 346, 350-51 (7th Cir. 1991); *Matter of Plunkett*, 82 F.3d 738, 740-42 (7th Cir. 1996).

In this case, even if the nexus test is satisfied, as the attorneys' fees at issue are tied to the same underlying mortgage debt and document, the equitable considerations do not favor allowance of the proof of claim amendment. The secured creditor, Finance, sought an amendment increasing the amount of the prior state court foreclosure judgment to include additional pre- and post-judgment attorneys' fees. It did so, however, even though a state court judge had previously denied a similar postjudgment request in August 2005 to increase and to amend the amount of the judgment due to the fact that the underlying judgment of foreclosure was pending on appeal. Regardless of the propriety of the timing of these postjudgment amendments in state court, the prior ruling made it clear that certain legal controversies and issues did exist, that the debtor objected to increasing the claim in August 2005, and that amendment of a judgment that long after certification for appeal was not a clear-cut, automatic right. Nevertheless, Finance sought an amendment increasing the judgment by approximately $1 million in attorneys' fees, with notice only to an attorney, Mr. Gertzman, who at one time represented the debtor in the nonbankruptcy proceedings and who certainly did not represent the estate or the debtor-in-possession in this Chapter 11 bankruptcy case. Thus, the attempt at foreclosure-judgment amendment was not brought to the attention of the bankruptcy estate, the debtor-in-possession acting as its trustee, or unsecured creditors. This lack of notice occurred in spite of the fact that the amendment, by increasing the attorneys' fees added to the foreclosure judgment, increased Finance's secured claim against the primary asset of the bankruptcy estate at the same time that the assets of the estate had very real potential to be insufficient to satisfy the claims of unsecured creditors. In other words, the amendment to the underlying foreclosure judgment sought to improve the secured creditor's claim vis-a-vis the claims of both

administrative claimants and unsecured creditors. The estate had a stake in both challenging Finance's underlying right to amend the judgment, as the debtor successfully did in August 2005, and challenging the specific amount of attorneys' fees Finance was requesting. Furthermore, notice issues are essential to the equitable considerations governing whether the proof of claim may be amended past the bar date, but the notices on the bankruptcy end were deficient. Finance contends that the Chapter 11 plan authorization for it to seek amendment of its foreclosure judgment provides the parties in interest in this Chapter 11 the requisite notice that it would increase its proof of claim. This provision in the Chapter 11 plan might generally authorize Finance's activity in state court, but it obviously does not put anyone, including the debtor-in-possession and other creditors, on notice of 1) the substantive grounds for amending the judgment, 2) the date on which such amendment would be sought from a state court judge, and 3) the specific amount of attorneys' fees that Finance wanted to add to its secured claim in the bankruptcy case by means of the amendment in the state court foreclosure case. Then, to top off this course of conduct, Finance sat on the amended state court foreclosure judgment it obtained for two months, failing to file its amended proof of claim of a rather important $1 million amendment (and to thereby notify the bankruptcy estate) until July 10, 2006. This delayed the ability of the debtor-in-possession and other creditors to launch an effective challenge to the amount before the expected sale of the estate property and concomitant distribution of proceeds in August 2006. "Timely presentation is essential to permit investigation and resolution of contests." *Matter of Plunkett*, 82 F.3d 738, 741 (C.A.7 1996).

The delay, being longer than 30 days, may also have changed the substantive standard by which the debtor-in-possession could have launched a challenge to the May 24, 2006,

4

amendment by further appeal or by postjudgment motion, *cf.* 735 ILCS 5/2-1203 & 1301(e) *with* 735 ILCS 5/2-1401. "An interlocutory order can be reviewed, modified, or vacated at any time before final judgment." *Catlett v. Novak*, 116 Ill.2d 63, 68, 506 N.E.2d 586, 589 (Ill. 1987); *see Leopold v. Levin*, 45 Ill.2d 434, 446, 259 N.E.2d 250 (Ill. 1970). A final judgment or order is more time sensitive, because on the 31st days after a final judgment, the trial court loses the power to make all amendments to its final judgment other than changes that merely correct the ruling to reflect what the trial court intended at the time. *Midwest Bank and Trust Co. v. Village of Lakewood*, 447 N.E.2d 1358, 1361-62 (Ill. App. Ct. 1983). After 30 days, the party must file a petition for relief from a final judgment, which is a proceeding independent from and collateral to the original proceeding. *Jones v. Unknown Heirs or Legatees of Fox*, 313 Ill.App.3d 249, 253, 728 N.E.2d 1157, 1161 (Ill. App. Ct. 2000). In the new, independent proceeding, the plaintiff must establish "(1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Jones v. Unknown Heirs or Legatees of Fox*, 313 Ill.App.3d 249, 254, 728 N.E.2d 1157, 1162. For the time period of 30 days right after a final Illinois judgment, a party has a more flexible standard for obtaining an order vacating a final judgment or amending the same. For instance, to obtain an order vacating a default judgment within 30 days, the defendant "need not allege that [he] had a meritorious defense or a reasonable excuse for failing to timely assert the defense. . . . Instead, the overriding consideration is whether or not substantial justice is being done between the parties . . . ." *Jones v. Unknown Heirs or Legatees of Fox*, 313 Ill.App.3d 249, 254, 728 N.E.2d 1157, 1162.

Finance notes in its brief that in an Illinois mortgage judicial foreclosure action, the final

judgment will not normally occur until the circuit court of the relevant county enters the statutorily-required order confirming the foreclosure sale, 735 Ill. Comp. Stat. 5/15-1508(b) (2004), order or possession, 5/15-1508(g), and transfer of title by deed, 5/15-1509. But given the fact that the confirmed Chapter 11 plan in this case specifically provided for the sale of Finance's collateral under sec 363 of the Code at market value, the distribution of the proceeds in satisfaction of its secured claim, and the discharge of the debtor-in-possession's personal liability to Finance, there is and was a substantial likelihood that no mortgage foreclosure sale and concomitant Illinois state court sale-confirmation hearing would ever occur. In other words, the May 24, 2006, amended foreclosure judgment was very likely the last judgment that would ever occur in the state court foreclosure proceeding. Therefore, it was for all intents and purposes a final judgment, and the 30 days after its entry was legally significant. If the bankruptcy estate or the debtor-in-possession as trustee wanted to challenge any or all of the attorneys' fees added to the foreclosure judgment, thereby preserving its ability to bring a claim objection under sec 502(b)(1) consistent with the *Rooker-Feldman* doctrine, it had 30 days during which it either needed to appeal or ask the state trial court to reconsider its ruling. Otherwise, it would need to file a petition to institute an independent proceeding in which the debtor-in-possession would have had to prove more than mere error in entering the judgment for additional attorneys' fees.

As Finance's emphasis on the *Rooker-Feldman* doctrine demonstrates, the ability of a party to a federal court proceeding to challenge an underlying state court judgment in the same state court that produced it is essential, as the federal court may ignore it only if it is void or if some other Bankruptcy Code or Rule permits the same action, including the federal standards governing proof of claim deadlines, amendments, and automatic-stay enforcement.

6

Additionally, the amendment to the proof of claim was itself done without bankruptcy court authorization and accompanying notice to creditors. Although the Federal Rules of Bankruptcy Procedure do not explicitly require this, the following Seventh Circuit passage suggests that a post-bar-date amendment would require court authorization:

> Under Rule 15(a) it needs leave of court to amend after a "responsive pleading" has been filed-and if the letter of May 1982 is a claim, then there have been oodles of responsive pleadings since. A bar date was set and ignored. Criteria in Rule 15 do not tell a bankruptcy court when it may allow post-bar-date amendments. We held in *In re Unroe*, 937 F.2d 346 (7th Cir.1991), that the court's general equitable powers under 11 U.S.C. § 105(a) permit it to allow such untimely amendments, but the question remains whether the court should grant leave to make any particular amendment.

*Matter of Plunkett*, 82 F.3d 738, 740 (7th Cir. 1996). Perhaps this Rule 3007 claim objection proceeding itself is the proceeding on "whether the court should grant leave to make any particular amendment," or perhaps some other amendment-authorization proceeding under Rule 7015 was skipped. Either way, the equities are substantially the same.

The Court recognizes that in *Plunkett* and *Brill*, the amending creditors waited inordinately long periods of time, and the Seventh Circuit concluded that having established no substantial excuses for the delay in the record, the creditors had been inexcusably neglectful as a matter of law and thus were not entitled to remands. Here, the creditor acted within the time contemplated by the confirmed plan for pursuing additions to its allowed secured claim. In *Unroe*, the creditor's claim flunked the Rule 15(c) nexus test, but the Seventh Circuit allowed the late amendment anyway both because the debtor's reorganization plan specifically contemplated it and because the claim's allowance and payment would not throw off payments to creditors contemplated by the plan. Here, the plan also specifically contemplates that Finance would

attempt to add additional amounts to its proof of claim after the bar date and after plan confirmation. The facts that came before those courts may superficially seem to justify allowing the amendment in this case. Here, however, the inequitable conduct of the amending creditor creates a much different scenario requiring this Court to disallow the late amendment under the highly fact-specific late-amendment criteria identified above.

In conclusion, even if the Amendment to Judgment for Foreclosure and Sale is a valid, enforceable state court judgment served in accordance with state law, the U.S. Bankruptcy Court controls the bankruptcy proof-of-claims allowance and amendment process under federal standards delineated above. The post-bar-date amended proof of claim of Finance is disallowed in this instance due to inequitable conduct, including lack of notice and delay, and prejudice to administrative claimants and to unsecured creditors.

## II. Right to Attorneys' Fees Under 11 U.S.C. § 362(h) for Violation of the Automatic Stay

The debtor and Finance disagree over whether Finance violated the automatic stay of creditor activity in § 362 by proceeding in the Circuit Court of Cook County to obtain additions to the foreclosure judgment on which its secured claim is based. They do not disagree that the conduct would be within the scope of the § 362(a) categories if the stay was in existence; they disagree over whether the stay had terminated under the interplay between § 362(c), the confirmed Chapter 11 plan, and this Court's order confirming this plan.

Section 362(c) provides,

(c) Except as provided in subsections (d), (e), (f), and (h) of this section--
(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;
(2) the stay of any other act under subsection (a) of this section continues until the earliest of--

8

> (A) the time the case is closed;
> (B) the time the case is dismissed; or
> (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied;

11 U.S.C. § 362(c). The parties seem to be in agreement that Finance's action in the foreclosure case would be an act against property of the estate under § 362(c)(1) and not some other act, like an attempt to collect a debt as the personal liability of the debtor, under § 362(c)(2). The fees that Finance attempts to collect are fees that would be collected specifically from a lien on proceeds of its collateral that was at least at one time property of the estate. To ascertain when the property of the estate is no longer property of the estate, we look to § 1141(b): "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b).

Of course that latter provision only takes one so far because the date of confirmation is not easy to discern: Chapter 11 plans, including this one, frequently provide for a date on which the Court actually enters the confirmation order and then a later effective date. Because the Bankruptcy Code does not spell out which date is significant for which purpose, we look to the plan and order confirming the plan to determine the significance of these dates. The plan in this case provides that the property of the estate revests in the debtor on the "Confirmation Date." (Debtor's Amended Plan of Reorg., Art. VII, ¶ 7.1.) The Confirmation Date is, in turn, the date on which the Court enters the order confirming the Chapter 11 plan on its docket. (Debtor's Amended Plan of Reorg., Art. II, ¶ 10-12.) Thus, the portion of the automatic stay relevant to this dispute terminated by operation of law on the earlier May 3, 2006, date rather than on the effective date. The effective date, by comparison, is a later business day chosen by the debtor

when 1) the confirmation order remains effective and not stayed, 2) the documents necessary for implementing the plan have all been executed, and 3) the sale of the primary real estate asset has closed with Bankruptcy Court approval. (Debtor's Amended Plan of Reorg., Art. XII, ¶ 12.1; Order Confirming Debtor's Amended Plan, III.B.1, at 10.)

Furthermore, Finance's contention that because the automatic stay had terminated by operation of law, it did not violate it on May 24, 2006, is well taken. This would be the end of the matter were it not for a confusing provision in the confirmation order:

> All injunctions and stays pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise shall remain in full force and effect until the Effective Date of the Plan [i.e., the later of the two dates], except that nothing herein shall bar the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order.

(Order Confirming Debtor's Amended Plan, III.D.2, at 15.) The Court is not aware of the existence of a § 105(a) injunction or stay either before or after the confirmation date. The § 362 stay appears to be carried forward past the confirmation date, but the portion of it protecting estate property had already terminated by operation of law on the confirmation date according to the terms of § 362(c) itself. So all this provision of the order really accomplished was to carry forward a stay that had a reduced scope. *Cf.* 11 U.S.C. § 326(c)(2); Debtor's Amended Plan of Reorg., Art. XIV, ¶ 14.2-.3, at 25 (discharge and discharge injunction come into existence on the effective date, terminating the rest of the automatic stay on the later date). The reduced scope was enough to permit Finance to pursue its claim *in rem*, i.e., against the property of the debtor. The Court finds no violation of the automatic stay. Although this result may have been happenstance under the terms of the statute, plan, and order, the result is also appropriate for other reasons. If the parties in interest in a bankruptcy case have a common desire to modify and

continue the effects of a very specific statutory stay such as § 362(a)-(c) in a consensual Chapter 11 plan, they ought to achieve that result through a § 105(a) plan injunction, which can be defined in the plan or order itself, *see also* 11 U.S.C § 1123(b)(6), rather than assume they or the Bankruptcy Court has authority to continue a stay that has terminated by operation of law.

Alternatively, even if the Court erred on the first ground, an additional ground exists. The second clause in the above confirmation-order provision explicitly creates an exception to the listed stays and injunctions. Because it is an exception and states that "nothing herein shall bar" certain actions, the clause trumps the prior one if it applies. This is not a problem under the very definite scope of § 362(a)-(c), because the Bankruptcy Court can provide for stay modification for cause pursuant to § 362(d)(1), and the clause essentially provides for modification of the previously listed stays and injunctions. The only condition for the exception is that the transaction be specifically contemplated by the plan. The Chapter 11 plan in this case does specifically contemplate that Finance could seek to have the Chancery Court of Cook County add additional amounts to the foreclosure judgment. (Order Conf. Debtor's Amended Plan of Reorg., III.B.2.d, at 11.)

One final alternative basis exists for finding that Finance did not violate the automatic stay. The confirmation order provides as follows:

> <u>Miscellaneous</u>. Notwithstanding the applicability of Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062 or 9014, **or otherwise**, the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry and **no stay** shall apply.

(Order Conf. Debtor's Amended Plan of Reorg., III.E.3, at 16 (emphasis added).) While the parties in interest who agreed to the Chapter 11 plan in this case were most ostensibly thinking of

11

a stay of the confirmation order itself, the language actually employed is so broad as to potentially eliminate any stay associated with the plan.

Because the Court has not found a violation of § 362(a), no basis for damages in the form of attorneys' fees under § 362(h) exists. Claim disallowance alone is not a basis for shifting attorneys' fees to the prevailing party.

## Conclusion

For these reasons, the debtor-in-possession's objection to the amended claim of 168 North Michigan Finance LLC is sustained; its request for attorneys' fees is denied.

Dated: September 11, 2006               ENTERED: *Jacqueline P. Cox*

_____
Jacqueline P. Cox
United States Bankruptcy Judge